### In re MINARD.

(District Court, D. Oregon. October 14, 1907.)

### No. 990.

BANKRUPTCY—ACTS OF BANKRUPTCY—TRANSFER OF PROPERTY WITH INTENT TO DEFRAUD CREDITOR.

Evidence that an alleged bankrupt, when insolvent within a few days, sold and transferred practically all of his property, receiving considerable sums of money, which he wholly fails to account for, together with his claim that he has neither money nor property remaining, is sufficient to establish an act of bankruptcy by a transfer of property with intent to defraud his creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 69–80.]

In Bankruptcy.

Beach & Simon and Woodcock & Potter, for creditors.
Thompson & Hardy and Platt & Platt, for bankrupt.

WOLVERTON, District Judge. This is a proceeding on petition praying that L. R. Minard be adjudged a bankrupt. Two principal

transactions are relied upon as constituting acts of bankruptcy, namely: First, that Minard, while insolvent, transferred, assigned, and set over to Mrs. M. M. Johnson a sum due him, in amount $500, for loss under a certain fire insurance policy; and, second, that, while so insolvent, he transferred and conveyed certain saloon fixtures, all for the purpose and with the intent of defrauding his creditors.

The proofs show that on October 4, 1905, Minard assigned the amount due under the insurance policy aforesaid to Mrs. Johnson, under a contract whereby he purchased from her certain mining stock at the agreed value of $1,750, and the policy was accepted by her as part payment upon the mining stock. The certificate of stock was withheld by Mrs. Johnson as security for the balance of the purchase price, which Minard agreed to pay on or before six months from the date of sale. This was probably a bona fide transaction on the part of Mrs. Johnson. A few days later—four or five days, or a week—Minard sold his saloon fixtures to one Alf. Walker for the consideration of $1,100; Walker paying him $600 in a check and cash, and assuming the payment of a chattel mortgage on the fixtures, in favor of the Salem Brewing Company, for $500. Beyond this, as showing the general character of Minard's business dealings, it was proven that on October 7th he sold and delivered to W. G. Scott, of Harrisburg, Or., certain slot machines—five in number—for which he was paid $300, and about the same time he collected $400 on a judgment.

Minard now asserts that he has no property whatever, money or otherwise, except the contract which he holds with Mrs. Johnson for the purchase of the mining stock. Through the course of a rigid examination, he professes to be wholly unable to tell what he has done with any considerable amount of the money paid him; and insists that he does not remember the amount of his indebtedness, and to whom owing, except that he named three firms, one being W. J. Van Schuyver & Co., the petitioners. He neither produced nor exhibited any books of account showing his indebtedness or any business transactions involved by the inquiry, and was apparently not altogether candid in his testimony. From a survey of the whole case, one cannot doubt that it was Minard's purpose in making all these transfers to put his property beyond the reach of his creditors; and that he was insolvent at the time—that is, when the property transferred is excluded—is beyond question.

Minard was and is therefore a bankrupt, and such will be the judgment of the court.